UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

Jay Dean Barrett,

        Plaintiff,                                      Case No. 2:14-CV-00133

v.                                                          Hon. Timothy P. Greeley

Carolyn W. Colvin,
Commissioner of Social Security,

        Defendants.
_____/

**OPINION**

        Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act on September 9, 2011.  *See* Transcript of Administrative Hearing at pages 134-140 (hereinafter Tr. at ___).  Plaintiff alleges that he became disabled on June 15, 2011, due to degenerative disc and joint disease of the lumbosacral spine.  Tr. at 61-62.  On November 9, 2011, Plaintiff's application was denied, and on November 29, 2011, Plaintiff filed a request for an administrative hearing before an Administrative Law Judge (ALJ).  Tr. at 80-81.  The ALJ held a hearing on January 29, 2013.  Tr. at 27-60.  At the hearing, Plaintiff was represented by counsel.  Tr. at 40.  Testifying at the hearing were Plaintiff and vocational expert David Oswald.  Tr. at 33-59.  In a decision issued March 27, 2013, the ALJ denied Plaintiff's claim for benefits.  Tr. at 7-26.  Plaintiff appealed the decision to the Appeals Council, which denied his request for review on April 18, 2014.  Tr. at 1-6.  Plaintiff then filed this action on June 16, 2014.[1]

---

[1] Both parties consented to proceed before a Magistrate Judge on September 15, 2014.

Plaintiff suffers from disorder of the lumbar spine and cervical spine status post C5-C7 fusion, migraine headaches, hand tremors, and an affective disorder. Tr. at 12. At his hearing, Plaintiff testified that he has tried to obtain a job, but that he has not been able to find anything to accommodate his disability. Tr. at 34. Plaintiff has prior work experience as a lumber inspector, millwright, and mill production manager. Tr. at 49. Plaintiff testified that going to the grocery store was too much walking for him, and he would have to sit after ten minutes. Tr. at 41. Plaintiff also indicated that he is depressed, and that psychiatric hospitalization had been suggested to him several times; however, he has declined this service. Tr. at 38-39.

In 2011, Plaintiff's treating physician, Dr. Holmes, indicated that Plaintiff had a function loss or impairment in his thoracolumbar spine, which resulted in: decreased movement, weakened movement, pain during movement, instability of station, interference with sitting, standing, or weight bearing. Tr. at 66-67, 358-59, 527-30. At the time, Dr. Holmes limited Plaintiff to walking only fifteen minutes at a time, sitting for thirty minutes, standing from ten to fifteen minutes, and lifting up to ten pounds. Tr. at 437. In May of 2012, Plaintiff received medical exams from Nurse Practitioner (NP) Judith Bjork and other doctors indicating that Plaintiff could perform desk jobs and that his hand tremors were benign. Tr. at 453-54. Also in 2012, after applying for Veterans Affairs (VA) benefits, Plaintiff received a VA disability rating of one hundred percent. Tr. at 203.

Vocational expert David Oswald testified at the hearing that if Plaintiff was limited to sedentary work, Plaintiff would not be able to perform his past jobs. Tr. at 53-54. However, Oswald listed other job possibilities in Michigan for Plaintiff, including: charge

account clerk (1,000 jobs), order clerk jobs (500-1,000), order operators (500-1,000), surveillance system monitor jobs (500-1,000), weight tester jobs (500-1,000), and hand packager and sorter jobs (20,000). Tr. at 53-56. Oswald indicated that if the work had to be simple and routine, that would eliminate Plaintiff's ability to do most of the jobs. Tr. at 56-57. However, if a person like Plaintiff was limited to frequent use of hands and arms, or a job where sitting and standing could be done at-will, none of the aforementioned jobs would be eliminated. Tr. at 54-58.

The ALJ determined that Plaintiff suffers from lumbar spine disorders, cervical spine disorders, migraines, hand tremors, and an affective disorder. Tr. at 12. The ALJ decided that Plaintiff could perform jobs that required frequent handling and fingering with his arms, and that Plaintiff was limited to simple and repetitive work. Tr. at 15. Based on these limitations, the ALJ concluded that Plaintiff was capable of performing desk and computer work. Tr. at 17. While acknowledging that Plaintiff could not perform his past work, the ALJ found that Plaintiff could perform anywhere from 3,500 to 4,500 jobs in Michigan (excluding hand packaging jobs). Tr. at 22.

Plaintiff filed an appeal on October 17, 2014, (Docket # 13), alleging that the ALJ's decision to deny social security benefits to Plaintiff was not supported by substantial evidence. Plaintiff maintains that the ALJ made the following errors:

> I. The ALJ committed reversible error by not properly considering the opinion of Plaintiff's treating physician.
>
> II. The ALJ committed reversible error by failing to properly evaluate Plaintiff's VA rating.
>
> III. The ALJ committed reversible error by using improper boilerplate

>language in determining Plaintiff's credibility.
>
>IV. The ALJ committed reversible error by failing to follow the vocational expert's answers to accurate hypothetical questions.

(Docket # 13). Defendant Commissioner of Social Security filed a response on November 20, 2014, (Docket # 15), to which Plaintiff filed a Reply Brief on December 1, 2014 (Docket # 16). The matter is now ready for decision.

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (The ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion). This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently. *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545

(6th Cir. 1986) (an *en banc* decision holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R § 404.1520(a). Steps four and five use the residual functional capacity assessment in evaluating the claim. *Id.*

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since June 15, 2011, the alleged onset date. Tr. at 12; *see* 20 C.F.R. § 404.1520(b). At step two, the ALJ determined Plaintiff has the severe impairments of the lumbar spine and cervical spine status post C5-C7 fusion, migraine headaches, hand tremors, and an affective disorder. Tr. at 12; *see* 20 C.F.R. § 404.1520(c). At step three, the ALJ determined Plaintiff's impairments or a combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. Tr. at 13. At step four, the ALJ determined Plaintiff had the residual functional capacity to perform sedentary work, as defined in 20 C.F.R.§ 404.1567(a) with the additional limitations of: not climbing ladders, ropes, or scaffolds; alternating between sitting and standing at will as long as he is not off task more than ten percent of the work time; performing frequent handling and fingering with the bilateral upper extremities; avoiding concentrated exposure to excessive vibration, unprotected heights, hazards or use of moving machinery; doing simple, routine, and repetitive work that is free of fast-paced production requirements, and; making only simple work-related decisions and few work place changes. Tr. at 15. At step five, the ALJ determined there were jobs that existed in

significant numbers in the regional and national economy that Plaintiff can perform. Tr. at 21. Therefore, the ALJ held that Plaintiff was not disabled during the time period from his alleged onset through his date last insured. Tr. at 22-23.

Plaintiff alleges that the ALJ improperly disregarded Plaintiff's treating physician's opinion and the conclusion of the VA that Plaintiff was disabled under the Social Security Act.

Plaintiff first contends that the ALJ afforded insufficient weight the 2011 opinion of his treating physician (Dr. Holmes) in determining that Plaintiff is not disabled. Under the Social Security Act, opinions of long-term treating physicians are only given "great weight" when the opinions are supported by "sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1527(c). The ALJ afforded little weight to Plaintiff's treating physician's evaluations for several reasons:

> The undersigned has considered the opinion provided by Dr. C.L. Holmes (Ex. 4F). The undersigned gives Dr. Holmes opinions some weight. While the record supports Dr. Holmes' opinion that the claimant was limited to sedentary work, it does not support his conclusion that the claimant could only occasionally use his hands or wrists for repetitive tasks. The medical record indicates neurologist, Dr. Debra Morley, examined the claimant on January 12, 2012 in connection with a tremor in the claimant's hand (Ex. 6F/130-134). Dr. Morley noted the claimant had normal muscle tone in his upper extremities and normal strength (Ex. 6F/133). The claimant was able to perform rapid-fire finger movements well bilaterally and his gait was narrow based with normal tandem, heel and toe walking (Id.). Dr. Morley concluded that the claimant's tremor was benign (Id.). In addition, the treatment records for the Veteran's Administration indicate that the claimant did not report any problems using his hands after Dr. Morley examined him in January 2012 (Ex. 6F; 7F). Therefore, the undersigned gives Dr. Holmes opinion regarding the

claimant's manipulative limitations little weight.

Tr. at 20. The ALJ provided a thorough and complete analysis for why he chose to afford little weight to Dr. Holmes' opinion.

Plaintiff also argues that the ALJ improperly relied on the findings of Nurse Practitioner (NP) Bjork in deciding Plaintiff was not disabled under the Social Security Act, rather than relying on the evaluation of Dr. Holmes. Nurse practitioners are considered "other [non-medical] sources" under 20 C.F.R. § 404.1513. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541, 124 Soc. Sec. Rep. Serv. 12 (6th Cir. 2007); *see Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed. App'x 392, 397-98 (6th Cir. 2014) (stating "other sources" can include nurse practitioners, physician assistants, and therapists, among other medical sources). Because assessments by these other sources are done more frequently, the Sixth Circuit has determined that ALJs may use their discretion to determine the proper weight to afford opinions from such other sources. *Cruse*, 502 F.3d at 541 (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 532, 541 (6th Cir. 2007)). The ALJ should generally explain the weight given to opinions for "other sources" when these opinions might affect the outcome of a case. *Cruse*, 502 F.3d at 541. While opinions from "other sources" cannot "establish the *existence* of a disability, their perspective should be given weight by the adjudicator and should be 'evaluated on key issues such as *impairment severity* and *functional effects*, along with other evidence in the file.'" *Engebrecht*, 572 Fed. App'x at 398 (quoting *Cruse*, 502 F.3d at 541) (emphasis added). These "other sources" opinions should be evaluated by using applicable factors, such as "how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse*, 502 F.3d at 541 (referencing *Martin v. Barnhart*, 470

F.Supp. 2d 1324, 1328-29 (D. Utah 2006)).

Based on the aforementioned authorities, the Court finds no merit to Plaintiff's argument that the ALJ improperly relied on NP Bjork's 2012 evaluation of Plaintiff. As of September 2011, Dr. Holmes was unaware whether Plaintiff would be able to use a mouse or keyboard. Tr. at 358. Subsequently, on May 22, 2012, NP Bjork examined Plaintiff and determined that Plaintiff should be able to perform desk jobs and work on computers. Tr. at 17, 453-454. In addition, Dr. Morley's evaluation in 2012 showed that Plaintiff had a benign tremor that would not interfere with his ability to do many jobs. Tr. at 491. Based on the totality of the information provided, the ALJ determined that NP Bjork's opinion that Plaintiff could perform sedentary work was supported by the majority of the of record, while Dr. Holmes' findings were not. Tr. at 15. Consequently, the ALJ did not improperly rely on NP Bjork's findings, or improperly "avoid" Dr. Holmes' opinion, in concluding Plaintiff is not disabled under the Social Security Act. Tr. at 22-23.

Plaintiff maintains that the ALJ committed reversible error by failing to properly consider Plaintiff's VA disability rating. There is not a "specific standard regarding the weight the Commissioner should afford a 100% disability determination by the VA." *LaRiccia v. Comm'r of Soc. Sec.*, 549 Fed. App'x 377, 387 (6th Cir. 2013) (citing *Stewart v. Heckler*, 730 F.2d 1065 (6th Cir. 1984)). Social Security regulations state that "a determination by another agency that [a person] is disabled or blind is not binding." 20 C.F.R. § 404.1504; *LaRiccia*, 549 Fed App'x at 388. "Regardless of the weight afforded, an ALJ 'should explain the consideration given to these [agency] decisions in the notice of decision.'" *LaRiccia*, 549 Fed. App'x at 388 (quoting SSR 06-03p, 2006 WL 2329939, at *7 (Aug. 9, 2006)); *see also Keeton v. Comm'r of*

*Soc. Sec.*, 583 Fed. App'x 515, 530-31 (6th Cir. 2014) (noting that an ALJ must consider determinations of other agencies, but is not required to follow them as long as reasons for not following are provided).

Here, the ALJ appropriately afforded little weight to the VA's findings that Plaintiff was 100% disabled:

> A decision from the Veteran's Administration indicates that the claimant was found one hundred percent disabled based on a combination of his physical and mental impairments (Ex. 8E/1-5). The undersigned gives this opinion little weight. The medical record does not support the conclusion that the claimant is disabled under the standards utilized by the Social Security Administration. The VA decision indicated that the claimant's depression resulted in a seventy percent disability as of October 4, 2011 (Ex. 8E/4). However, the claimant's mental health treatment notes from the VA indicate that he was always well oriented, his cognitive functioning was normal and his insight and judgement were fair (Ex. 6F; 7F). In addition, while the decision indicates the claimant's GAF score was fifty (indicating severe symptoms), the treatment notes indicate the claimant's treating psychologists repeatedly assessed the claimant's GAF score above sixty, which does not support the conclusion that the claimant's mental impairment was as debilitating as the VA determination suggests (Ex. 8E/11; 3F/63; 6F/109, 136). As late as August 2012, Dr. Miller's exam indicated the claimant [sic] no thoughts of suicide (Ex. 6F/14). The claimant was casually dressed and groomed, his speech was clear, his cognitive functioning was normal and his mood was good (Ex. 6F/14). The claimant's thought process was normal, and his insight and judgment were good (Ex. 6F/14-15). Thus the VA determination is not well-supported by the objective evidence.
>
> In consideration of the foregoing, the undersigned finds that the claimant's previous Veteran Administration disability determination is not a reliable indicator of the claimant's functional ability, especially considering the fact that the VA utilizes completely different standards for disability, for different purposes, and with different methods than those relevant to this decision. For example, the VA's analysis of claims is not designed to determine whether a claimant has the ability to perform work activity but is rather designed to compensate military veterans for service-connected

> physical and mental limitations; it does not seek vocational expertise in the decision process; and bases its disability ratings on consultative assessments without regard for all relevant medical evidence. For all the above reasons, the undersigned finds that determination worthy of little weight.

Tr. at 19-20. The ALJ's reasons for not following the VA's rating is thorough and complete, and is supported by substantial evidence.

Plaintiff alleges that the ALJ committed reversible error by using boilerplate language in addressing Plaintiff's credibility. When an ALJ evaluates an individual's complaints of pain and disabling symptoms, the ALJ may consider the credibility of the person. *Walters*, 127 F.3d at 531. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* (citing *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). An ALJ's determination of a Plaintiff's credibility must be supported by substantial evidence. *Id.*; *Winslow*, 566 Fed. App'x at 422. Simply stating that Plaintiff has pain or other symptoms is not sufficient to establish that the individual is disabled. *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)). The ALJ must assess an individual's pain by using a two prong test:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* (referencing *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)); *see also* 20 C.F.R. §

404.1529(a). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531 (citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)). An ALJ can also consider an individual's ability to do household and social activities when assessing the credibility of a person's alleged pain and disabling symptoms. *Id.* at 532.

In determining Plaintiff's allegations of pain and disabling symptoms were not credible, the ALJ identified several inconsistencies between Plaintiff's testimony and the medical records provided. The ALJ appropriately evaluated and considered Plaintiff's allegations of pain in his decision:

> The claimant said that he experiences constant pain in his neck and low back. The claimant said that he could sit for thirty minutes and could not stand or walk for long because of his back impairment. He also testified that he lost feeling in his legs after sitting for thirty minutes. The claimant testified that his cervical problem prevented him from lifting, pushing or pulling. Allegedly, the claimant's depression causes difficulty focusing and suicidal thoughts on a daily basis. The claimant said that his physical impairments prevent him from helping with the household chores, and his impairments forced him to lie down several times a day. The claimant did report that he did go hunting occasionally with the assistance of family members.

Tr. at 15. Despite Plaintiff's above-mentioned allegations, the ALJ determined that Plaintiff's testimony regarding his pain and disabling symptoms was not credible:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision . . . .

In terms of the claimant's alleged physical limitations, the medical record does not support the claimant's allegations of disabling symptoms. The claimant has a history of treatment for low back pain, cervical radiculopathy and obesity that predates his alleged onset date of June 15, 2011 (Ex. 1F; 2F; 3F; 7F). Magnetic resonance imaging (MRI) of the claimant's lumbar spine was taken on June 16, 2011 (Ex. 2F/22-23; 3F/50; dup. at 7F/106). According to Dr. Timothy O'Connell, the imaging showed moderate right sided hypertrophy and mild left sided hypertrophy of the facets at the L5/S1 level (Id.). Diagnostic imaging of the claimant's lumbosacral spine was taken at the Iron Mountain Veteran's Administration (VA) Hospital on July 12, 2011 in response to the claimant's reports of back pain (Ex. 3F/90-91). According to Dr. Timothy O'Connell, the imaging showed mild degenerative disc disease of the lumbar spine at the L3-L4 level and mild facet degenerative changes at the L4 through S1 levels (Ex. 7F/56) . . . .

The undersigned has considered the testimony and written statements provided by the claimant (ex. 4E). The undersigned finds the claimant's allegations regarding the severity of his limitations are simply not credible. The medical record does not support his allegations. The claimant testified that whenever he sat for more than thirty minutes, his legs went numb. However, EMG testing performed in August 2011 was normal and multiple exams in the record indicate the claimant had normal sensory function (Ex. 6F/40, 133; 7F/8F/10). Moreover, in the treatment records he admitted repeatedly to the ability to sit for extended periods, such as when he said his typical day consisted of him "sitting in a chair and rot(ing)" (Ex. 6F/47). He also explained on multiple occasions his plan to sell his home and travel in a mobile home/travel trailer, which of course would require significant sitting on a daily basis (e.g., see 6F/35). The claimant also testified that the tremor in his hands caused him to drop things. However, the medical record indicates that on January 12, 2012, neurologist; [sic] Dr. Debra Morley's exam indicated that the claimant's ability to perform rapid-fire finger movements, sensation and muscle tone in his upper extremities was normal (Ex. 6F/133). Dr. Morley concluded that the claimant's tremor was benign (Id.). The claimant also testified that depression resulted in suicidal thoughts on a daily basis. However, as discussed above, the claimant routinely denied any suicidal ideations during appointments with Dr. Lynn Miller (e.g., Ex. 6F/141). The claimant also testified that his depression made it difficult for him to concentrate or focus. However, the mental status examinations in the record indicate that

>the claimant was oriented in all three spheres, his thought process was normal and his cognitive functioning was normal (Id.). The mental health treatment notes also indicate that the claimant's treating mental health professionals assessed the claimant's GAF score above sixty on multiple occasions, which does not support the alleged severity of his symptoms (Ex. 6F; 7F).
>
>In addition, the claimant's actual functioning, as shown by his activities of daily living, does not support his allegations of disability. The claimant testified that his physical and mental impairments severely limited his daily activities. However, in December 2011 and April 2012, the claimant reported that he was compensating for not working by focusing on being a caregiver for his grandchildren (Ex. 6F/104, 141). On August 28, 2012, the claimant told Dr. Miller that he was a full time parent to his granddaughter, which suggests the claimant's daily activities are not as limited as alleged (Ex. 6F/13).
>
>Finally, the treatment record, specifically, the lack of treatment after the claimant was awarded disability benefits from the Veteran's Administration, does not support the severity of his allegations. While the claimant sought treatment for his mental and physical impairments prior to the awarding of benefits in August 2012, there are few if any treatment records from the Veteran's Administration dated after August 2012 in the record (Ex. 8E). As already noted, the treatment records often record the claimant has [sic] having only mild mental symptoms, and the objective findings are relatively mild that support his physical complaints. The undersigned finds the claimant's statements do not support any additional limitations in the residual functional capacity outlined above.

Tr. at 15-16, 20-21.

The ALJ's assessment of Plaintiff's pain and disabling symptoms is thorough and complete. The ALJ properly concluded that Plaintiff's allegations were inconsistent with the medical evidence. *See, e.g., Winslow*, 566 Fed. App'x at 422 (demonstrating that ALJ found claimant's alleged functional limitations not credible because it largely conflicted with credible, objective medical evidence). Because the ALJ's reasoning is supported by substantial evidence,

this Court concludes that the ALJ properly used his discretion in finding the Plaintiff's allegations not credible.

While Plaintiff agrees with the ALJ that Plaintiff can no longer perform his past relevant work, Plaintiff argues that the ALJ committed reversible error by asking the vocational expert hypothetical questions that did not completely consider Plaintiff's limitations and were not supported by substantial evidence. "Once the ALJ determined plaintiff did not have the residual functional capacity to perform his past relevant work, the burden shifted to the Secretary to show that plaintiff possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This burden is met if the finding is supported by "substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Id.* at 779 (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). The Sixth Circuit has long held that substantial evidence can be provided by asking a hypothetical question to a vocational expert as long as the hypothetical questions include a "complete assessment of [the claimant's] physical and mental state and [] include[s] an accurate portrayal of [claimant's] individual physical and mental impairments." *Brooks v. Comm'r of Soc. Sec.*, 531 Fed. App'x 636, 644 (6th Cir. 2013) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d at 779) (stating that hypothetical questions are appropriate as long as the questions accurately portray the plaintiff's individual mental and physical impairments). An "ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of*

*Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see Winslow*, 566 Fed. App'x at 421.

Plaintiff alleges that the ALJ improperly incorporated Plaintiff's work-related limitations into the hypothetical questions posed to vocational expert Oswald. Namely, that Plaintiff's alleged social interactions and full-time work week restrictions were not considered. However, after review of the record, it is clear that the ALJ considered only the limitations he determined were credible when asking Oswald several hypothetical questions[2] in order to determine the extent to which Plaintiff's limitations would affect his ability to obtain an unskilled sedentary occupation. In preparing hypothetical questions for Oswald, the ALJ determined that the only credible physical limitations of Plaintiff's residual functional capacity were: (1) sedentary work not to include climbing ladders, ropes, or scaffolds, (2) only frequent handling and fingering due to the numbness in Plaintiff's hands, and (3) work that allows him to alternate between sitting and standing throughout the day. Tr. at 17. Regarding Plaintiff's credible mental impairments, the ALJ determined that Plaintiff's residual functional capacity accounted for his depression "by limiting him to simple, routine and repetitive work that does not involve fast-paced production requirements, only simple decisions and few if any work place

---

[2] The ALJ asked Oswald what jobs would be available to a sedentary person that: was Plaintiff's age, education, work experience, and residual functional capacity; could not climb ladders, ropes or scaffolds; had limited exposure to excessive vibration, unprotected heights, hazards, and use of moving machinery; had the aforementioned limitations and were also limited to frequent, not constant, handling and fingering of the bilateral upper extremities; had the additional requirement that work be simple, routine, and repetitive in a work environment free of any fast-paced production requirements, involving only simple, work-related decisions with few, if any, workplace changes; had social limitations of not more than occasional interaction with the public, co-workers, and supervisors; had the additional limitations of simple, repetitive, slow and routine, with only minor (if any) workplace decisions and changes; had to sit and stand alternatively at-will provided the person is not off task more than ten percent of the work period; could not work doing sustained work activity on a regular and continuing basis for eight hours a day, five days a week, for a forty hour work week or an equivalent schedule. Tr. at 53-59.

changes." Tr. at 19.  Based on this information, the ALJ asked Oswald several hypothetical questions, and Oswald identified various jobs that a person with the above-mentioned limitations could do.[3]

The record reflects that the hypothetical questions the ALJ asked Oswald were proper because the ALJ included "all of the functional limitations that []he deemed credible" into his questions.  *Winslow*, 566 Fed. App'x at 421-22 (citing *Justice v. Comm'r of Soc. Sec. Admin.*, 515 Fed. App'x 583, 588 (6th Cir. 2013) and *Casey*, 987 F.2d at 1235).  These determinations are supported by substantial evidence, as previously outlined by this Court.

Plaintiff's request to remand this case to the Social Security Administration pursuant to Sentence Four or Six of 42 U.S.C. § 405(g) is denied.  There is substantial evidence in the record that supports the Commissioner's decision that Plaintiff was not disabled as defined by the Social Security Administration.  In addition, Plaintiff has not provided new or previously unavailable evidence to support his claim.  *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) (noting that new evidence is that which did not exist or was unavailable at the time of the hearing).  In fact, Plaintiff makes no argument that he has new and material evidence for the

---

[3] The ALJ summarized the possible occupations provided by Oswald based on the hypothetical questions in his decision:

> [G]iven all of these factors[,] the individuals would be able to perform the requirements of representative occupations such as charge account clerk, with 1,000 jobs in the region and 34,000 nationally; order clerks, with 500 to 1,000 jobs in the region and 10,000-15,000 nationally; call out operator with 500 to 1,000 jobs in the region and 15,000 nationally; surveillance monitor, with 500 to 1,000 jobs in the region and 9,000 jobs nationally; inspector, with 1,000 to 1,500 jobs in the region and 25,000 nationally; and hand packers with 20,000 jobs nationally.

Tr. at 22.

courts to consider on remand.  Instead, Plaintiff argues that his previously admitted evidence was improperly considered by the ALJ.  Consequently, this Court concludes the Plaintiff has not met his burden to grant a reversal or remand in his case pursuant to Sentence Four or Six of 42 U.S.C. § 405(g).

Accordingly, the decision of the Commissioner is **AFFIRMED** and Plaintiff's request for relief is **DENIED**.


Dated: June 15, 2015

     /s/ TIMOTHY P. GREELEY
    TIMOTHY P. GREELEY
    UNITED STATES MAGISTRATE JUDGE